IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **EARL L. HARRIS, JR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  Case No. CIV-21-286-GLJ |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Claimant Earl L. Harris, Jr., requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires Claimant to establish that he is not engaged in substantial gainful activity. Step two requires Claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If Claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If Claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where Claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that Claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if Claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was fifty years old at the time of the administrative hearing (Tr. 33, 163). He completed high school and has past relevant work as a construction worker I (Tr. 21, 237).  Claimant has not engaged in substantial gainful activity since his application date of February 18, 2020, at which time he alleged disability due to degenerative disc disease, broken collarbone, narrowing of the spinal canal, two discs in his neck having no cushion, and bone spurs in the neck (Tr. 236).

### Procedural History

On February 18, 2020, Claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.  His application was denied.  ALJ Michael Mannes conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 14, 2021 (Tr. 16-23).  The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal.  *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  At step two, he found that Claimant had the severe impairments of degenerative joint disease/carpal tunnel syndrome and degenerative disc disease.  (Tr. 18).  At step three, he found Claimant's impairments did not meet a Listing.  (Tr. 19).  At step four, he found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in

20 C.F.R. § 416.967(b), except that he could only occasionally climb ramps/stairs, stoop, crouch, crawl, and reach overhead with the left upper extremity; frequently balance, kneel, handle/finger; never climb ladders/ropes/scaffolds; and he must avoid frequent exposure to vibration. (Tr. 19). The ALJ then proceeded to step five and determined that the claimant was not disabled because there was work that he could perform in the national economy, *e.g.*, cashier II, hand packager, and mail clerk (Tr. 21-23).

## Review

Claimant contends that the ALJ erred by: (i) failing to properly account for the evidence related to his physical impairments, and further failing to properly evaluate the evidence of his pain, and (ii) failing to properly support his findings in the written decision. The Court agrees the ALJ erred in evaluating Claimant's RFC, and the decision of the Commissioner must therefore be reversed.

The relevant medical evidence reflects that Claimant has been treated for neck, shoulder, and back pain as far back as 2016. (Tr. 479). In 2017, he underwent physical therapy, where the provider noted he was hypersensitive to any touch around the neck and shoulders, and that he had a shuffling gait with poor HS/TO. (Tr. 493). In September 2018, Claimant was noted to have a normal gait, no swelling in joints, and grips equal bilaterally, but he nevertheless still had a limited range of motion of the cervical spine with pain and reported paresthesia down his arms bilaterally, as well as crepitus upon movement. (Tr. 503).

On August 21, 2018, a checkup revealed the claimant had decreased range of motion of the neck and left shoulder, but no swelling or edema. (Tr. 440). X-rays of the neck and

shoulder on September 28, 2018 revealed a stable C4-C5 grade 1 spondylolisthesis and grossly stable degenerative disc and joint disease of the neck, as well as a stable grade 4-5 acromioclavicular separation and stable non-healed distal clavicle fracture of the shoulder. (Tr. 444, 464, 466). He was told he had severe narrow foraminal narrowing and possible torticollis, as well as a possible left labrum tear and left shoulder separation. (Tr. 445). An MRI of the left upper extremity the following month revealed no rotator cuff tears, mild infraspinatus tendinopathy, an unchanged grade 3 acromioclavicular joint separation with slightly increased impingement on the underlying suprasinatous myotendinous junction, possible small anterosuperior labral tear, and the suggestion of minimal medical subluxation of the long head of the biceps tendon with associated tendinopathy. (Tr. 468).

Claimant underwent an MRI of the brain on March 25, 2019, which showed no *acute* intracranial abnormality. (Tr. 471). An MRI of the cervical spine at the same time revealed multilevel spondylosis with, *inter alia*, moderate to severe narrowing of the canal at C3-C4, C4-C5 and moderate to severe foraminal narrowing in multiple locations, as well as severe foraminal narrowing on the right at C4-5. (Tr. 470). On August 19, 2019, Neurologist John Kareus, D.O., did a Botox injection in Claimant's scalene after diagnosing him with occipital neuralgia bilaterally and segmental dystonia of cervical spine with head tilt to the right. (Tr. 429-431).

A September 2020 follow-up appointment regarding Claimant's MRIs indicates that "[t]he MRI scan of the lumbar spine is not too bad but the MRI scan of the cervical spine is significant with significant degenerative arthritis along with foraminal stenosis and mild canal stenosis. The foraminal stenosis is listed as severe at multiple levels. . . . He does

have significant degenerative changes at multiple levels in the cervical spine, significant flattening of the cervical lordosis along with a 3 mm anterolisthesis of C4." (Tr. 558). Claimant was referred to neurosurgery for possible cervical radiculopathy based on these findings. (Tr. 558). An October 2020 physical exam revealed ropy tissue texture changes at the cervical and lumbar paraspinal tissue diffusely, step off at mid cervical spine and superior/mid lumbar spine, and tenderness to palpation at superior lumbar spine and just lateral to it on the right. (Tr. 545). A November 2020 scan of the cervical spine revealed multilevel severe degenerative changes likely resulting in multiple levels of foraminal and canal stenosis, along with additional degenerative findings noting that some degree of fusion is also likely. (Tr. 569).

On May 23, 2021, Dr. Adam T. Waldon, D.O. drafted a letter indicating that Claimant was under his medical care, with diagnosis and symptoms making "several activities of daily living difficult." (Tr. 598). Dr. Waldon continued, stating that Claimant required close follow up with him and with specialists in the future for both evaluation and therapy. (Tr. 598).

The record contained no consultative exams of the claimant. State reviewing physicians determined initially and upon reconsideration that the claimant could perform light work with only frequent left overhead reaching. (Tr. 85-87, 98-99). The reconsideration was completed on June 1, 2020. (Tr. 99).

At the administrative hearing, Claimant testified that he was waiting on the Choctaw nation for follow-up treatment with neurosurgery for his neck. (Tr. 44). He testified that the Botox injections had not helped his neck or his headaches, and that his neck has gotten

so bad he can no longer do any kind of physical labor. (Tr. 47-48). Additionally, he testified as to the degenerative disc disease in his back, noting he had been prescribed pain medication. (Tr. 49). In response to questioning, he testified he could walk a block or two in pain but would need to rest up to an hour after doing so, that he could lift something approximately twenty pounds like a bag of potatoes but with pain, and that it hurt to bend over. (Tr. 52, 60). Additionally, he stated that any reaching causes additional pain, and that he wears a neck brace constantly other than when taking a shower. (Tr. 61). He testified he cannot stand long enough to do laundry, and he cannot bend over to do laundry, and that he accompanies his girlfriend to the store but does not go in with her. (Tr. 52-53). He believed he could stand an hour without causing additional pain. (Tr. 63). He testified that his neck continues to get worse and that three doctors have referred him to neurosurgery, but that the Choctaw Nation has not approved it. (Tr. 57).

In his written opinion at step four, the ALJ summarized Claimant's hearing testimony, and referred to some of the evidence in the record. (Tr. 19-21). The ALJ summarized Claimant's testimony as follows: "The claimant testified that he feels unable to work due to his alleged back pain, neck pain, left shoulder pain, and hand pain." (Tr. 19). The ALJ further noted imaging of Claimant's lumbar and cervical spine reflected mild to moderate spinal disease with foraminal stenosis, and that he "at times" reported back pain to providers. (Tr. 20). The ALJ then contrasted Claimant's reports of neck and shoulder pain with records noting the clamant had a normal gait, strength, and tone, and that he reported feeling "okay overall" although he still had neck and back pain. The ALJ then found Claimant should be limited to light work with the aforementioned postural

limitations.  He found the state reviewing physician opinions somewhat persuasive, but that the record supported additional postural limitations.  As to Dr. Waldon's letter, the ALJ found it vague, poorly supported, and inconsistent with the record because he could, *inter alia*, ambulate normally.  (Tr. 21).  He ultimately concluded that there was work the claimant could perform at step five and found he was therefore not disabled (Tr. 21-23).

The claimant argues that the ALJ improperly evaluated his RFC and the Court agrees.  "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)."  Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination."  *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (citing *Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)).  In this case, although the ALJ discussed some of the evidence related to the claimant's physical impairments, he focused only on records that supported his conclusions while ignoring consistent records from treating and consultative physicians which supported additional limitations, particularly regarding his limited range of motion. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]. *See also Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir.1996) ("[I]n

addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") [citation omitted].  For example, the ALJ repeatedly supported his findings by noting the claimant had a normal gait, strength, and tone, and could ambulate normally.  (Tr. 20-21).  He made no reference at all to the repeated objective findings of moderate to severe foraminal narrowing and severe degenerative findings related to his *upper* extremities, which may not affect Claimant's ability to ambulate but could go to other functional abilities such as lifting, carrying, reaching, pushing, and pulling.   The ALJ has thus failed to point to medical evidence demonstrating how he accounted for Claimant's severe impairments in the RFC.  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."); *see also* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

The Court finds that reversal is sufficient for the reason listed above, but additionally notes that a consultative examination would have been helpful in this case, despite recognizing that an ALJ has broad latitude in deciding whether to order consultative examinations.  *Hawkins v. Chater*, 113 F.3d 1162, 1166-67 (10th Cir. 1997) (Once the claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment.") (citing *Diaz v. Secretary of*

*Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990)); *see also Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 740-741 (10th Cir. 2007) ("The ALJ's inability to make proper RFC findings may have sprung from his failure to develop a sufficient record on which those findings could be based. The ALJ must make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC.") (quotations omitted). Although an ALJ does not generally have a duty to order a consultative examination unless requested by counsel or the need is clearly established in the record, *see Hawkins*, 113 F.3d at 1168, the Court points out that such an examination would have been helpful in this case to clarify the extent of the claimant's physical impairments along with more specific effects on his functional limitations and mobility.

Next, the Court turns to the ALJ's assessment of Claimant's subjective complaints and his pain. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[2] Tenth Circuit precedent is in alignment with the Commissioner's regulations but characterizes the

---

[2] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[3] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

---

[3] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The undersigned Magistrate Judge agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

The claimant contends, *inter alia*, that the ALJ failed to properly consider the factors set forth above when evaluating his subjective statements. The Court agrees. Here, the ALJ referred to Soc. Sec. Rul. 16-3p, but his only "assessment" consisted of boilerplate language finding Claimant's symptoms "not entirely consistent with the medical evidence." (Tr. 20). The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient, *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10, and here the ALJ did not even do that. Additionally, although boilerplate language is disfavored, it "is problematic only when it appears in the absence of a more thorough analysis.'" *Keyes-Zachary*, 695 F.3d at 1170 (*quoting Hardman v. Barnhart*, 362 F.3d 676, 678-679 (10th Cir. 2004)). In this case, the ALJ's boilerplate language indicates the reasons for his findings are "explained in this decision"; however, the ALJ did not thereafter conduct any further analysis of Claimant's subjective symptoms. The ALJ wholly failed to explain his boilerplate conclusion with affirmative links to the record, and his analysis of Claimant's subjective symptoms was therefore defective. *See, e. g., Hardman*, 362 F.3d at 678-81; *see also Kepler*, 68 F.3d at 391 (the ALJ must "explain why the specific evidence relevant to each factor led him to conclude the claimant's subjective complaints were not credible.").

Because the ALJ failed to properly analyze the evidence of record, the Commissioner's decision is reversed and the case remanded to the ALJ for further analysis. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ

should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 30th day of June, 2023.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**